81 Cal.Rptr.2d 301 (1999)
19 Cal.4th 1084
969 P.2d 146
The PEOPLE, Plaintiff and Respondent,
v.
Trino Villa MENDEZ, Defendant and Appellant.
No. S066175.
Supreme Court of California.
January 14, 1999.
*303 Phillip I. Bronson and Steven C. Bronson, under appointments by the Supreme Court, Encino, for Defendant and Appellant.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Esteban Hernandez and Jeffrey J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.
MOSK, J.
A defendant who has pleaded guilty or nolo contendere to a charge in the superior court, and who seeks to take an appeal from a judgment of conviction entered thereon, may not obtain review of so-called "certificate" issues, that is, questions going to the legality of the proceedings, including the validity of his plea, unless he has complied with section 1237.5 of the Penal Code[1] and the first paragraph of rule 31(d) of the California Rules of Court[2]  which require him to file in the superior court a statement of certificate grounds as an intended notice of appeal within 60 days after rendition of judgment, *304 and to obtain from the superior court a certificate of probable cause for the appeal within 20 days after filing of the statement and, hence, within a maximum of 80 days after rendition of judgment.
Such a defendant may obtain review solely of so-called "noncertificate" issues, that is, postplea questions not challenging his plea's validity and/or questions involving a search or seizure whose lawfulness was contested pursuant to section 1538.5, if he has complied with the second paragraph of rule 31(d)[3]  which requires him to file in the superior court a notice of appeal stating noncertificate grounds within 60 days after rendition of judgment.
We granted review in this cause to address the following question: In order to obtain review of certificate issues, must such a defendant have complied with section 1237.5 and rule 31(d), first paragraph, fully, and, specifically, in a timely fashion? The answer, as we shall explain, is: Yes.

I
Appellant Trinidad (or Trino) Villa Mendez was riding one day in the city of Barstow in San Bernardino County with his brother Pedro in Pedro's black 1976 Ford pickup truck; Mendez directed Pedro to the vicinity of the Tijuanitas Apartments on Crook Street; he had Pedro park, got out himself, returned after about 15 minutes with one Jose Carrillo, and shoved him in; he had Pedro drive to the open desert some 10 or 15 miles outside the city and about ½ miles from a cemetery; once at Fort Irwin Road north of State Highway 58, he had Pedro stop, and pulled Carrillo out alongside the road; he began to beat him with his fists; Pedro left the truck, tried to intervene but was prevented by Mendez, and returned to the vehicle; Mendez then began to stab Carrillo with a knife; again, Pedro left the truck, and tried to intervene but was prevented by Mendez; finishing his attack, Mendez left Carrillo dead at the bottom of a berm about 8 to 10 feet from the road, with the knife lodged in the left side of his chest; he took the truck's keys from Pedro, entered the vehicle with him, and drove from the scene; he subsequently admitted the substance of what he had done to his mother, who would later disclose it to the authorities. In his encounter with Carrillo, Mendez was searching for one Miguel Cervantes, who had testified against him at a trial resulting in a conviction and sentence of imprisonment for rape; Carrillo said that he did not know Cervantes's whereabouts; Mendez evidently did not believe him, and made him pay with his life. It appears that Mendez soon fled to Mexico, and that, years later, he returned to the area, and was then arrested and committed to jail.
By complaint filed before a magistrate of the San Bernardino County Municipal Court, the People charged Mendez in a single count with murder. For enhancement of sentence, they alleged that he personally used a deadly or dangerous weapon, viz., a knife, in its commission. The magistrate appointed him counsel.
It appears that, not long afterwards, the magistrate certified to the superior court a special proceeding on Mendez's mental competence under the statutory scheme set out at section 1367 et seq. After a trial, the superior court found him mentally incompetent, suspended the criminal proceedings, and committed him to Patton State Hospital for evaluation and treatment with a view toward his expeditious restoration to mental competence. The hospital's medical director subsequently made a determination that he had regained mental competence and filed a certificate of restoration thereto. After a hearing, the superior court found him to have recovered mental competence and reinstated the criminal proceedings.
Mendez pleaded not guilty to the murder charge, including therewith a denial of the personal use allegation.
*305 After a preliminary examination, the magistrate held Mendez to answer.
By information filed in the superior court, as subsequently amended, the People charged Mendez in the first of two counts with murder. For enhancement of sentence, they alleged that he personally used a deadly or dangerous weapon in the form of a knife in its commission. They charged him in the second count with kidnapping. For enhancement of sentence, they alleged, as to each of the charges, that he had previously been convicted of rape. For the same purpose, they alleged, again as to each of the charges, that he had previously served a prison term for his rape conviction. The superior court appointed him counsel.
Mendez pleaded not guilty, and not guilty by reason of insanity, to the murder and kidnapping charges, including therewith a denial of the personal use, prior conviction, and prior prison term allegations.
The superior court subsequently declared a doubt as to Mendez's mental competence and again suspended the criminal proceedings. After a trial, it found him mentally incompetent and committed him to Patton State Hospital a second time for further evaluation and treatment. The hospital's medical director subsequently made a second determination that he had regained mental competence and filed a second certificate of restoration thereto. After a hearing, at which the People and Mendez submitted the question on the basis of a report transmitted by the hospital's medical director, the superior court, for a second time, found him to have recovered mental competence and reinstated the criminal proceedings.
The People and Mendez succeeded in negotiating a disposition, without waiver of his right of appeal, whereby he would plead guilty to the murder charge, but in the second degree, and they would move to dismiss the kidnapping charge and strike the personal use, prior conviction, and prior prison term allegations. With the superior court's leave, he withdrew his original plea to the charges of not guilty and not guilty by reason of insanity, including his denial of the allegations, and entered a new and different plea of guilty to second degree murder with a maximum sentence of imprisonment for 15 years to life. On that basis, the superior court convicted him of second degree murder. It later sentenced him to imprisonment for 15 years to life, and, in reliance on a probation report, awarded him credit for 1,226 days in presentence custody, comprising 914 days for actual time in such custody and 312 days for work performance and good behavior. On the People's motion, it expressly dismissed the kidnapping charge and impliedly struck the allegations. It proceeded to render judgment accordingly. It then caused entry of judgment.
Mendez filed a notice of appeal in the superior court immediately after rendition of judgment. He completed a preprinted form designed for use after a plea of guilty or nolo contendere. By check mark, he indicated that his appeal was based on noncertificate grounds, specifically, postplea matters not challenging the validity of his guilty plea, albeit without identifying what they might be. He did not indicate that his appeal was based on certificate grounds as well. Hence, he did not fill out a section (which his counsel happened to sign) in which he could have stated such grounds with an eye toward obtaining a certificate of probable cause. The superior court clerk prepared the record on appeal, including both clerk's and reporter's transcripts.
Mendez's appeal was docketed in the Court of Appeal, Fourth Appellate District, Division Two. The Court of Appeal appointed him counsel. He moved to augment the record on appeal with a reporter's transcript of the hearing that resulted in the superior court's second finding of recovery of mental competence and reinstatement of criminal proceedings. The Court of Appeal so ordered. The superior court clerk prepared the augmentation of the record on appeal comprising the reporter's transcript referred to above.
About six months after rendition of judgment, Mendez returned to the superior court. Assertedly pursuant to section 1237.5, but not within 60 days after rendition of judgment as expressly prescribed by rule 31(d), first paragraph, he filed a statement of certificate *306 grounds, which went to the legality of the proceedings, and, specifically, the validity of his guilty plea  to the effect that the superior court accepted his guilty plea while he may have been mentally incompetent, because it assertedly failed to hold a hearing on his mental competence after Patton State Hospital's medical director had made his second determination that he had regained mental competence and had filed his second certificate of restoration thereto, and because his counsel assertedly failed to request such a hearing. Assertedly pursuant to section 1237.5, but not within the maximum of 80 days after rendition of judgment as impliedly prescribed by rule 31(d), first paragraph, he obtained a certificate of probable cause. The superior court clerk prepared a supplemental clerk's transcript for the record on appeal, including the documents referred to above.
In his opening brief in the Court of Appeal, Mendez presented two certificate issues: First, the superior court erred under California statutory law when it assertedly failed to hold a hearing on his mental competence after Patton State Hospital's medical director had made his second determination that he had regained mental competence and had filed his second certificate of restoration thereto; and his counsel provided ineffective assistance, contrary to the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution, when he assertedly failed to request such a hearing. Second, he was denied due process of law, in violation of the Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a), of the California Constitution, because the mental competence statutory scheme does not adequately define the nature and occasion of any hearing on mental competence that follows the making of a determination that a defendant has regained mental competence and the filing of a certificate of restoration thereto. In their brief, the People argued to the contrary on the merits. In his reply brief, Mendez presented for the first time, by leave of the Court of Appeal, a single noncertificate issue: The superior court erred when it calculated his presentence custody credits as 1,226 days instead of 1,251, and thereby denied him 25 days. In a supplemental brief, the People argued to the contrary at the threshold, claiming on the basis of decisional law that Mendez had not preserved the point for review because he had not presented it to the superior court.
On its own motion, the Court of Appeal raised the question of the effect on Mendez's appeal of his failure to comply with section 1237.5 and, in particular, rule 31(d), first paragraph, as to the certificate issues. In a supplemental brief, Mendez argued that his omission should have no effect. In a supplemental brief of their own, the People argued that it should result in dismissal.
With a unanimous opinion certified for publication in part, the Court of Appeal issued an order dismissing Mendez's appeal in its entirety.
As to the certificate issues of mental incompetence, the Court of Appeal dismissed Mendez's appeal under its view that a defendant like him must have complied with section 1237.5 and rule 31(d), first paragraph, fully, and, specifically, in a timely fashion, and that he had not done so. In expressing that view, it adhered "[i]n obedience" to our then most recent decisions in the premises (People v. Panizzon (1996) 13 Cal.4th 68, 51 Cal.Rptr.2d 851, 913 P.2d 1061; People v. Hoffard (1995) 10 Cal.4th 1170, 43 Cal. Rptr.2d 827, 899 P.2d 896; People v. Jones (1995) 10 Cal.4th 1102, 1108, 43 Cal.Rptr.2d 464, 898 P.2d 910), and distinguished older ones (People v. Holland (1978) 23 Cal.3d 77, 151 Cal.Rptr. 625, 588 P.2d 765; In re Brown (1973) 9 Cal.3d 679, 108 Cal.Rptr. 801, 511 P.2d 1153; People v. Herrera (1967) 66 Cal.2d 664, 58 Cal.Rptr. 319, 426 P.2d 887); it also declined to follow various decisions of the Courts of Appeal (People v. Clark (1996) 51 Cal.App.4th 575, 59 Cal.Rptr.2d 234; People v. Vento (1989) 208 Cal.App.3d 876, 256 Cal.Rptr. 497 (per curiam)), and distinguished others (People v. Warburton (1970) 7 Cal.App.3d 815, 86 Cal.Rptr. 894; People v. Coley (1968) 257 Cal.App.2d 787, 65 Cal.Rptr. 559, disapproved on a point not pertinent here; People v. Delles (1968) 69 Cal.2d 906, 910, 73 Cal.Rptr. 389, 447 P.2d 629).
As to the noncertificate issue of miscalculation of presentence custody credits, the *307 Court of Appeal dismissed Mendez's appeal pursuant to section 1237.1, which prohibits a defendant like him from taking an appeal as to any such question unless he has first presented it to the superior court, as he apparently did not. It distinguished People v. Acosta (1996) 48 Cal.App.4th 411, 55 Cal. Rptr.2d 675: Acosta read section 1237.1 not to prevent a defendant from raising a question of this sort if he had properly raised others as well; Mendez, however, had not satisfied that condition.[4]
Mendez filed a petition for rehearing. The Court of Appeal denied his application.
Mendez then filed a petition for review. We granted his application. We now affirm.

II
As stated in the introduction, the question presented is this: In order to obtain review of certificate issues, must a defendant who has pleaded guilty or nolo contendere to a charge in the superior court, and who seeks to take an appeal from a judgment of conviction entered thereon, have complied with section 1237.5 and rule 31(d), first paragraph, fully, and, specifically, in a timely fashion?
The law that is applicable to this issue is the product of statutes enacted by the Legislature, which appear in the Penal Code, and rules adopted by the Judicial Council, which appear in the California Rules of Court. In this area, as elsewhere, the Legislature's authority is generally "plenary," limited by the California Constitution, but not granted thereby. (Methodist Hosp. of Sacramento v. Saylor (1971) 5 Cal.3d 685, 691, 97 Cal.Rptr. 1, 488 P.2d 161.) The Judicial Council's authority is different. It is granted by the state charter, which expressly empowers it to "adopt rules for" "practice and procedure" "not inconsistent with statute." (Cal. Const, art. VI, § 6.) It is also granted by statute, which effects a similar empowerment at least by implication. (See §§ 1235, 1239, subd. (a), 1246; see generally, § 1247k.)
Under statutory law, a defendant may generally take an appeal from a judgment of conviction. (§ 1237, subd. (a).)
To do so, the defendant must file a notice of appeal in the superior court (Rule 31; see generally, § 1239, subd. (a).)
To do that, the defendant must file the notice of appeal within 60 days after rendition of judgment. (Rule 31(a); see rule 31(d), 2d par.; see generally, § 1239, subd. (a).) A timely notice of appeal, as a general matter, is "essential to appellate jurisdiction." (6 Witkin & Epstein, Cal.Criminal Law (2d ed. 1989) Appeal, § 3220, p. 3979.) It largely divests the superior court of jurisdiction and vests it in the Court of Appeal. (Id., §§ 3135-3136, pp. 3874-3876.) An untimely notice of appeal is "wholly ineffectual: The delay cannot be waived, it cannot be cured by nunc pro tunc order, and the appellate court has no power to give relief, but must dismiss the appeal on motion or on its own motion." (Id., § 3220, p. 3979.) The purpose of the requirement of a timely notice of appeal is, self-evidently, to further the finality of judgments by causing the defendant to take an appeal expeditiously or not at all.
Under decisional law, by contrast, a defendant generally may not take an appeal from a judgment of conviction entered on a plea of guilty or, apparently, nolo contendere, except on grounds going to the legality of the proceedings, including the validity of his plea. (People v. Hoffard, supra, 10 Cal.4th at pp. 1177-1178, 43 Cal.Rptr.2d 827, 899 P.2d 896 [guilty plea]; People v. Laudermilk (1967) 67 Cal.2d 272, 281-282, 61 Cal.Rptr. 644, 431 P.2d 228 [same].) The basis of this "general principle" (People v. Laudermilk, supra, 67 Cal.2d at p. 281, 61 Cal.Rptr. 644, 431 P.2d 228) is the fact that a "plea of guilty [itself] constitutes a conviction" (ibid.; accord, People v. Hoffard, supra, 10 Cal.4th at p. 1177, 43 Cal.Rptr.2d 827, 899 P.2d 896), indeed the "highest kind of conviction which the case admits" (People v. Hickman (1928) 204 Cal. 470, 476, 268 P. 909; accord, People v. Laudermilk, supra, 67 Cal.2d at p. 281, 61 Cal. *308 Rptr. 644, 431 P.2d 228), and that a plea of nolo contendere is its equivalent (§ 1016, subd. 3 [providing that the "legal effect of... a plea [of nolo contendere], to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes"]).
In line with such decisional law, section 1237.5 provides that a defendant may not take an appeal from a judgment of conviction entered on a plea of guilty or nolo contendere unless he has filed in the superior court a statement of certificate grounds, which go to the legality of the proceedings, including the validity of his plea, and has obtained from the superior court a certificate of probable cause for the appeal. (E.g., People v. Lloyd (1998) 17 Cal.4th 658, 663, 72 Cal.Rptr.2d 224, 951 P.2d 1191.)
Section 1237.5 is procedural in nature. (People v. Hoffard, supra, 10 Cal.4th at pp. 1178, 1179, 43 Cal.Rptr.2d 827, 899 P.2d 896; People v. Holland, supra, 23 Cal.3d at p. 83, 151 Cal.Rptr. 625, 588 P.2d 765; see People v. Ribero (1971) 4 Cal.3d 55, 63, 92 Cal.Rptr. 692, 480 P.2d 308.) Specifically, it establishes a mechanism for the operation of the "general" appeal-limiting "principle" of the decisional law (People v. Laudermilk, supra, 67 Cal.2d at p. 281, 61 Cal.Rptr. 644, 431 P.2d 228), which is reflected both before (see ibid.) and after (see People v. Hoffard, supra, 10 Cal.4th at p. 1178, 43 Cal.Rptr.2d 827, 899 P.2d 896) its enactment.
Section 1237.5 has as its purpose "to promote judicial economy" (People v. Panizzon, supra, 13 Cal.4th at p. 75, 51 Cal. Rptr.2d 851, 913 P.2d 1061) "by screening out wholly frivolous guilty [and nolo contendere] plea appeals before time and money are spent" on such matters as the preparation of the record on appeal (People v. Hoffard, supra, 10 Cal.4th at p. 1179, 43 Cal. Rptr.2d 827, 899 P.2d 896), the appointment of appellate counsel (ibid.), and, of course, consideration and decision of the appeal itself.
Rule 31(d), first paragraph, implements section 1237.5 by providing, in pertinent part, that the defendant may not take or prosecute an appeal unless he has filed the statement of certificate grounds as an intended notice of appeal within 60 days after rendition of judgment, and has obtained a certificate of probable cause for the appeal within 20 days after filing of the statement and, hence, within a maximum of 80 days after rendition of judgment. (E.g., People v. Lloyd, supra, 17 Cal.4th at p. 663, 72 Cal.Rptr.2d 224, 951 P.2d 1191; see People v. Panizzon, supra, 13 Cal.4th at p. 75, 51 Cal.Rptr.2d 851, 913 P.2d 1061; People v. Jones, supra, 10 Cal.4th at p. 1106, 43 Cal.Rptr.2d 464, 898 P.2d 910.) Unless he has done so, his purported appeal is not "operative" in this regard (rule 31(d), 1st par.), that is to say, it does not require preparation of the record on appeal (see ibid.), the appointment of appellate counsel, or consideration and decision of the appeal itself.
Like section 1237.5, rule 31(d), first paragraph, is procedural in nature. It refines the mechanism that the former establishes.
Also like section 1237.5, rule 31(d), first paragraph, has as its purpose to promote judicial economy by screening out wholly frivolous guilty and nolo contendere appeals, and to do so in a regular and timely fashion.
With that said, section 1237.5 admits of this exception: The defendant may take an appeal without a statement of certificate grounds or a certificate of probable cause if he does so solely on noncertificate grounds, which go to postplea matters not challenging his plea's validity and/or matters involving a search or seizure whose lawfulness was contested pursuant to section 1538.5. (E.g., People v. Lloyd supra, 17 Cal.4th at pp. 663-664, 72 Cal.Rptr.2d 224, 951 P.2d 1191; People v. Panizzon, supra, 13 Cal.4th at pp. 74-75, 51 Cal.Rptr.2d 851, 913 P.2d 1061; People v. Jones, supra, 10 Cal.4th at p. 1106, 43 Cal.Rptr.2d 464, 898 P.2d 910.)
Rule 31(d), second paragraph, implements the exception to section 1237.5 by providing, in pertinent part, that the defendant may take and prosecute an appeal, without a statement of certificate grounds or a certificate of probable cause, if he has based his appeal solely on noncertificate grounds and has filed a notice of appeal so stating within 60 days after rendition of judgment. (E.g., People v. Lloyd supra, 17 Cal.4th at p. 664, *309 72 Cal.Rptr.2d 224, 951 P.2d 1191; see People v. Panizzon, supra, 13 Cal.4th at p. 75, 51 Cal.Rptr.2d 851, 913 P.2d 1061; People v. Jones, supra, 10 Cal.4th at pp. 1106-1107, 43 Cal.Rptr.2d 464, 898 P.2d 910.) If he does so, his appeal is operative in this regard. (See rule 31(d), 2d par.)
It follows that, under section 1237.5 and rule 31(d), first paragraph, the Court of Appeal generally may not proceed to the merits of the appeal, but must order dismissal thereof, unless the defendant has filed a statement of certificate grounds as an intended notice of appeal within 60 days after rendition of judgment, and has obtained a certificate of probable cause within 20 days after filing of the statement and, hence, within a maximum of 80 days after rendition of judgment. (See, e.g., In re Brown, supra, 9 Cal.3d at p. 683, 108 Cal.Rptr. 801, 511 P.2d 1153; People v. Castelan (1995) 32 Cal. App.4th 1185, 1188, 38 Cal.Rptr.2d 574.)
Under rule 31(d), second paragraph, however, the Court of Appeal may proceed to the merits of the appeal if the defendant has based his appeal solely on noncertificate grounds and has filed a notice of appeal so stating within 60 days after rendition of judgment. It may accordingly address noncertificate issues. (E.g., People v. Jones, supra, 10 Cal.4th at pp. 1109-1113, 43 Cal.Rptr.2d 464, 898 P.2d 910.) But it must decline to address certificate issues. (People v. Panizzon, supra, 13 Cal.4th at pp. 75, 89, 51 Cal.Rptr.2d 851, 913 P.2d 1061; People v. Jones, supra, 10 Cal.4th at p. 1112, fn. 5, 43 Cal.Rptr.2d 464, 898 P.2d 910 [dictum].) For the presence of a notice of appeal stating noncertificate grounds does not supply the absence of a statement of certificate grounds and a certificate of probable cause. (People v. Hoffard, supra, 10 Cal.4th at p. 1180, fn. 8, 43 Cal.Rptr.2d 827, 899 P.2d 896 [dictum]; People v. Jones, supra, 10 Cal.4th at p. 1112, fn. 5, 43 Cal.Rptr.2d 464, 898 P.2d 910 [dictum]; see People v. Castelan, supra, 32 Cal.App.4th at pp. 1187-1188, 38 Cal. Rptr.2d 574, approved in People v. Hoffard, supra, 10 Cal.4th at p. 1180, fn. 8, 43 Cal. Rptr.2d 827, 899 P.2d 896; People v. Patterson (1984) 151 Cal.App.3d 252, 255-257, 198 Cal.Rptr. 585 [same]; People v. Pinon (1979) 96 Cal.App.3d 904, 908-909, 158 Cal. Rptr. 425 (per Kaus, P.J.) [same].)
In sum, the defendant may not obtain review of certificate issues unless he has complied with section 1237.5 and rule 31(d), first paragraph.
Having considered the question of what section 1237.5 and rule 31(d), first paragraph, require, which has proved relatively free from controversy, we must not ignore the question of how they should be applied, which has not.
Over the years, section 1237.5 and rule 31(d), first paragraph, have been applied in a strict manner.[5] The justification offered has been "judicial economy," with a view toward the fair and efficient operation of the appellate system as a whole.[6] Its assumption is that, as a general matter, a judgment of conviction entered on a defendant's plea of guilty or nolo contendere does not present any issue warranting relief on appeal, and hence should not be reviewed thereon.
In the same period, section 1237.5 and rule 31(d), first paragraph, have also been applied *310 in a relaxed manner.[7] Here too, the justification offered has been "judicial economy," but with a focus on the expedient disposition of the individual appeal and its peculiar issues.[8] Its assumption is that, even if, as a general matter, such a judgment of conviction does not present any issue warranting relief on appeal, and hence should not be reviewed thereon, the defendant in question is already before the court, and, unless he obtains review, is likely to come before it again by means of petition for writ of habeas corpus or otherwise.
After careful consideration, and in confirmation of our most recent decisions on point (People v. Panizzon, supra, 13 Cal.4th at p. 89, fn. 15, 51 Cal.Rptr.2d 851, 913 P.2d 1061; People v. Hoffard, supra, 10 Cal.4th at p. 1180 & fn. 8, 43 Cal.Rptr.2d 827, 899 P.2d 896 [dictum]), and in the face of words and actions on the part of the Courts of Appeal inconsistent therewith (see People v. Cortez, supra, 55 Cal.App.4th at p. 429, 64 Cal. Rptr.2d 71; People v. Clark, supra, 51 Cal. App.4th at pp. 579-581, 59 Cal.Rptr.2d 234; People v. Cepeda, supra, 49 Cal.App.4th at p. 1237, 57 Cal.Rptr.2d 246), we believe that section 1237.5 and rule 31(d), first paragraph, should be applied in a strict manner. In enacting section 1237.5, the Legislature evidently sought to promote judicial economy in the appellate system as a whole, for it established a mechanism that did not invite consideration of the peculiar facts of the individual appeal. The provision lays down a "condition precedent" to the taking of an appeal within its scope. (People v. Breckenridge, supra, 5 Cal.App.4th at p. 1101, 8 Cal. Rptr.2d 1.) It is a general "legislative command" to defendants. (Ibid.) It is not an authorization for "ad hoc dispensations" from such a command by courts. (People v. Pinon, supra, 96 Cal.App.3d at p. 909, 158 Cal.Rptr. 425.) Indeed, it effectively precludes dispensations of this sort, which are "squarely contrary" to its terms (People v. Warburton, supra, 7 Cal.App.3d at p. 820, 86 Cal.Rptr. 894; accord, People v. Castelan, supra, 32 Cal.App.4th at p. 1188, 38 Cal. Rptr.2d 574). In adopting what is now rule 31(d), first paragraph, to implement the provision, the Judicial Council also evidently sought to promote judicial economy in the appellate system as a whole, for it refined the mechanism that the Legislature established.
Even if we did not believe that section 1237.5 and rule 31(d), first paragraph, should be applied in a strict manner, we would have to conclude that they should not be applied in a relaxed one. History has demonstrated that the search for "judicial economy" in the expedient disposition of the individual appeal and its peculiar issues has been costly indeed, as fact-specific questions have arisen, time and again, demanding legally indeterminate answers.[9] In view of this demonstration, *311 we are of the opinion that the search for "judicial economy" on the peculiar facts of the individual appeal has turned out to be futile. We now determine that it must be abandoned.
When section 1237.5 and rule 31(d), first paragraph, are applied in a strict manner, the following conclusions are compelled:
Under section 1237.5 and rule 31(d), first paragraph, the Court of Appeal generally may not proceed to the merits of the appeal, but must order dismissal thereof, unless the defendant has filed a statement of certificate grounds as an intended notice of appeal, and has obtained a certificate of probable cause, in full compliance therewith.
Under rule 31(d), second paragraph, the Court of Appeal may nevertheless proceed to the merits of the appeal if the defendant has based his appeal solely on noncertificate grounds and has filed a notice of appeal so stating. It may accordingly address noncertificate issues. But it must decline to address certificate issues: the presence of a notice of appeal stating noncertificate grounds does not supply the absence of a statement of certificate grounds and a certificate of probable cause.
Therefore, the defendant may not obtain review of certificate issues unless he has complied with section 1237.5 and rule 31(d), first paragraph, fully, and, specifically, in a timely fashion  that is to say, unless he has done what they require, how they require, and when they require. Plainly, he has not complied with them fully unless he has complied with them in a timely fashion. For, as indicated, their demands extend beyond what and how to when. If he has complied only "substantially," he has not complied sufficiently; and if he has not complied sufficiently, he has not complied at all. (People v. Breckenridge, supra, 5 Cal. App.4th at p. 1099, 8 Cal.Rptr.2d 1.)

III
We now turn to review the order of the Court of Appeal dismissing Mendez's appeal from the superior court's judgment of conviction entered on his guilty plea as to both the certificate issues of mental incompetence and the noncertificate issue of miscalculation of presentence custody credits.
We review an order of this sort independently. (People v. Lloyd, supra, 17 Cal.4th at p. 664, 72 Cal.Rptr.2d 224, 951 P.2d 1191.)
After such scrutiny, we find it sound.
At the outset, we note what is undisputed and indisputable: Mendez's mental incompetence issues are indeed certificate issues, inasmuch as they are questions going to the legality of the proceedings, and, specifically, the validity of his guilty plea. (People v. Panizzon, supra, 13 Cal.4th at p. 76, 51 Cal.Rptr.2d 851, 913 P.2d 1061; see People v. Laudermilk, supra, 67 Cal.2d at pp. 281-282, 61 Cal.Rptr. 644, 431 P.2d 228.) In contrast, his miscalculation of presentence custody credits issue is a noncertificate issue, inasmuch as it is, on its very face, a postplea question not challenging his guilty plea's validity.
As to the certificate issues of mental incompetence: Mendez failed to comply with section 1237.5 and, in particular, rule 31(d), first paragraph, fully, and, specifically, in a timely fashion. He did not timely file a statement of certificate grounds, but was about four months late. As a result, he did not timely obtain a certificate of probable cause, but was about four months late as well. It is true that he timely filed a notice of appeal stating noncertificate grounds  and only noncertificate grounds. Since he did not identify any noncertificate issues in *312 his notice of appeal, and did not present his single noncertificate issue of miscalculation of presentence custody credits before filing his reply brief, he apparently had not discovered that issue  or any other  before he filed his notice of appeal. In any event, and to repeat, he did not timely file the requisite statement of certificate grounds or timely obtain the requisite certificate of probable cause. Therefore, the Court of Appeal did not err in declining to address the certificate issues.[10]
As to the noncertificate issue of miscalculation of presentence custody credits: By its terms, section 1237.1 bars a defendant, like Mendez, from taking an appeal as to any such question unless he has first presented it to the superior court, as Mendez apparently did not. By implication, and a fortiori, it allows, if not requires, the Court of Appeal to decline to address a question of this sort unless he has complied. Therefore, the Court of Appeal did not err in declining to address the noncertificate issue. People v. Acosta, supra, 48 Cal.App.4th 411, 55 Cal. Rptr.2d 675  on whose reasoning and result we need not, and do not, pass (see, ante, 81 Cal.Rptr.2d at p. 307, fn. 4, 969 P.2d at 152, fn. 4)  is not to the contrary. It holds no more than that the Court of Appeal may address a question of this sort if it is properly presented with others as well. It does not even suggest that the Court of Appeal must do so, especially when, as here, it finds that that condition is not satisfied.
With respect to the noncertificate issue of miscalculation of presentence custody credits, Mendez does not complain of the Court of Appeal's dismissal order. Inasmuch as he does not speak, there is nothing to which we need respond.
But, with respect to the certificate issue of mental incompetence, Mendez does indeed complain.
At the threshold, Mendez may be understood to argue that he cannot be held to have failed to comply with section 1237.5 and, in particular, rule 31(d), first paragraph, because the latter is inconsistent with the former and, as such, is invalid. We are not persuaded. That is because rule 31(d), first paragraph, is not inconsistent with section 1237.5 in any respect, including, particularly, its requirement that a defendant like Mendez must file a statement of certificate grounds as an intended notice of appeal, and must do so within 60 days after rendition of judgment. Section 1237.5 is altogether silent on such procedural matters as how and when a defendant may take an appeal. Its silence cannot reasonably be understood as a statement that the defendant may take an appeal how and when he pleases. It hardly needs mention that rule 31(d), first paragraph, is wholly consistent with rule 31(a), and rule 31(d), second paragraph, which together require all other defendants to file a notice of appeal within 60 days after rendition of judgment.
Mendez then argues to the effect that he did not fail to comply with section 1237.5 and, in particular, rule 31(d), first paragraph. His point is based on a reading of rule 31(d), first paragraph, that would require a defendant like him to file a statement of certificate grounds within 60 days after rendition of judgment only if he intends the statement as a notice of appeal  as he assertedly did not, inasmuch as he had already filed his notice of appeal, although one stating only noncertificate grounds. We are again not persuaded.
Rule 31(d), first paragraph, requires a defendant who desires to base his appeal on certificate grounds to file a statement of certificate grounds as an intended notice of appeal, and to do so within 60 days after rendition of judgment. It speaks of his *313 statement of certificate grounds as an "intended" notice of appeal  in the sense of a "conditional" one  because he cannot take an appeal, and hence cannot file a notice thereof, before he obtains a certificate of probable cause, which depends on the statement of certificate grounds in the first place.
By contrast, rule 31(d), second paragraph, requires a defendant who desires to base his appeal solely on noncertificate grounds simply to file a notice of appeal stating noncertificate grounds, and to do so, by operation of rule 31(a), within 60 days after rendition of judgment.
Together, rule 31(d), first paragraph, and rule 31(d), second paragraph, require a defendant  like Mendez  who desires to base his appeal on both certificate and noncertificate grounds to file a statement of certificate grounds as an intended notice of appeal within 60 days after rendition of judgment. Rule 31(d), second paragraph, prohibits such a defendant from filing a notice of appeal stating noncertificate grounds and thereafter raising certificate issues in addition; for it applies only if he bases his appeal solely on noncertificate grounds, and hence must be understood to limit his appeal thereto. For its part, rule 31(d), first paragraph, does not prohibit such a defendant from filing a statement of certificate grounds as an intended notice of appeal and thereafter raising noncertificate issues in addition; for it does not apply only if he bases his appeal solely on certificate grounds, and hence need not be understood to limit his appeal thereto.[11]
Mendez's reading of rule 31(d), first paragraph  namely, a defendant must file a statement of certificate grounds within 60 days after rendition of judgment only if he intends the statement as a notice of appeal  is insupportable.
As stated, rule 31(d), first paragraph, requires a defendant who desires to base his appeal on certificate grounds to file a statement of certificate grounds as an intended, that is, conditional, notice of appeal, and to do so within 60 days after rendition of judgment.
Rule 31(d), first paragraph, clearly "limits the time for the defendant to file the required statement of [certificate] grounds" (People v. Jones, supra, 10 Cal.4th at p. 1106, 43 Cal.Rptr.2d 464, 898 P.2d 910; accord, People v. Panizzon, supra, 13 Cal.4th at p. 75, 51 Cal.Rptr.2d 851, 913 P.2d 1061), and clearly does so without qualification.
Mendez's reading would allow a defendant like him to file a statement of certificate grounds beyond the period fixed at 60 days after rendition of judgment and to obtain a certificate of probable cause beyond the period fixed at 20 days after filing of the statement and, hence, beyond a maximum of 80 days after rendition of judgment. It would thereby plainly undermine the very purpose of section 1237.5, which is to promote judicial economy by screening out wholly frivolous guilty and nolo contendere plea appeals, and would even more plainly undermine the purpose of rule 31(d), first paragraph, which is to promote such economy by screening out *314 such appeals in, among other things, a timely fashion. The effectiveness of this screening depends, of course, on whether wholly frivolous appeals, and only wholly frivolous appeals, are in fact barred. That depends, in turn, on whether the screening is done in a timely fashion. Screening is entrusted, at least in the first instance, to the superior court (see People v. Panizzon, supra, 13 Cal.4th at p. 89, fn. 15, 51 Cal.Rptr.2d 851, 913 P.2d 1061; People v. Ballard, supra, 174 Cal.App.3d at p. 988, 220 Cal.Rptr. 323), which is more likely to make a proper determination if it acts near rendition of judgment, and is less likely to do so if it does not. For the passage of time increases the risk of error, with the result that, as recollection fades, it might screen out an appeal that is not wholly frivolous, or fail to screen out one that is. Mendez asserts that "it makes no sense" to require a defendant to file a statement of certificate grounds within 60 days after rendition of judgment unless he intends the statement as a notice of appeal. Quite the contrary. It makes perfectly good sense. For it serves to decrease the risk of error.
Mendez also argues to the effect that he did not fail to comply with section 1237.5 and, in particular, rule 31(d), first paragraph, because he had complied with them "substantially." Yet again, we are not persuaded. That is because he had not complied "substantially." He relies, ultimately, if only impliedly, on various decisions (see, e.g., In re Brown, supra, 9 Cal.3d at p. 683, fn. 6, 108 Cal.Rptr. 801, 511 P.2d 1153 [dictum]; People v. Herrera, supra, 66 Cal.2d at p. 665, 58 Cal.Rptr. 319, 426 P.2d 887; People v. Warburton, supra, 7 Cal.App.3d at p. 820, 86 Cal.Rptr. 894; People v. Coley, supra, 257 Cal.App.2d at p. 793, 65 Cal.Rptr. 559) that he reads to support this proposition: a defendant has "substantially" complied when, in a timely fashion, the superior court certifies that the clerk's and reporter's transcripts are correct, because, under such circumstances, the superior court "in effect" (People v. Herrera, supra, 66 Cal.2d at p. 665, 58 Cal.Rptr. 319, 426 P.2d 887, italics omitted) executes a certificate of probable cause. His reliance is misplaced. The decisions in question arose under, or at least in contemplation of, rule 35(c), as it formerly stood, effective January 1, 1961, which required the superior court to certify the correctness of the clerk's and reporter's transcripts. Rule 35(c), as it presently stands, does not  with the result that the superior court below was not required to make such a certification, and in fact did not do so. In any event, it matters not whether Mendez had complied "substantially." As we have explained, "substantial" compliance is not sufficient compliance. (People v. Breckenridge, supra, 5 Cal.App.4th at p. 1099, 8 Cal.Rptr.2d 1.) Whether it would promote judicial economy or further other legitimate purposes to allow a defendant to comply beyond the period fixed by rule 31(d), first paragraph, is a consideration of which we may take no account. For to do so would entail amendment of the rule itself. And that is outside of our power.
Mendez finally argues to the effect that, even if he failed to comply with section 1237.5 and, in particular, rule 31(d), first paragraph, his omission is not fatal. Here too, we are not persuaded. His point appears to be that he may obtain review of certificate issues as well as noncertificate issues because he filed his notice of appeal in a timely fashion. His notice of appeal, however, stated only noncertificate grounds. We have held that such a notice does not restrict the questions cognizable on appeal to the noncertificate issues stated therein. (People v. Jones, supra, 10 Cal.4th at pp. 1109-1113, 43 Cal.Rptr.2d 464, 898 P.2d 910.) At the same time, however, we have stated that it does not expand those questions to include certificate issues. (Id. at p. 1112 & fn. 5, 43 Cal.Rptr.2d 464, 898 P.2d 910 [dictum].) We now so hold.

IV
For the reasons stated above, we conclude that we must affirm the order of the Court of Appeal dismissing the appeal.
It is so ordered.
GEORGE, C.J., and KENNARD, J., BAXTER, J., WERDEGAR, J., and CHIN, J., concur.
*315 Concurring Opinion by BROWN, J.
In the words of the inimitable Yogi Berra, "`It's déjà vu all over again.'"[1] (Araiza et al., The Jurisprudence of Yogi Berra, supra, 46 Emory L.J. at p. 714.) Thousands upon thousands of more words, and still no closer to a workable standard. (See People v. Lloyd (1998) 17 Cal.4th 658, 667, 72 Cal. Rptr.2d 224, 951 P.2d 1191 (dis. opn. of Brown, J.) [chronicling 15 previous attempts by this court to articulate the scope of the certificate of probable cause requirement].) Our jurisprudence "gives fresh meaning to the phrase, `[We're] from the government and [we're] here to help you.'" (U.S. v. Gomez (9th Cir.1996) 92 F.3d 770, 772.) It is as if we were trying to render the certificate of probable cause requirement, which is designed "to promote judicial economy" (People v. Panizzon (1996) 13 Cal.4th 68, 75, 51 Cal. Rptr.2d 851, 913 P.2d 1061), as incomprehensible, cumbersome, and inefficient as possible. For the reasons stated in my dissenting opinion in People v. Lloyd, supra, 17 Cal.4th at pages 667-669, 72 Cal.Rptr.2d 224, 951 P.2d 1191, I concur in the result reached here.
NOTES
[1] Section 1237.5  all unspecified section references here and hereafter are to the Penal Code  states in pertinent part: "No appeal shall be taken by the defendant from a judgment of conviction [in the superior court] upon a plea of guilty or nolo contendere ..., except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury[,] showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal...."
[2] Rule 31(d)  all rule references here and hereafter are to the California Rules of Court  states in its first paragraph: "If a judgment of conviction is entered upon a plea of guilty or nolo contendere [in the superior court], the defendant shall, within 60 days after the judgment is rendered, file as an intended notice of appeal the statement required by section 1237.5 ...; but the appeal shall not be operative unless the trial court executes and files the certificate of probable cause required by that section. Within 20 days after the defendant files the statement the trial court shall execute and file either a certificate of probable cause or an order denying a certificate and shall forthwith notify the parties of the granting or denial of the certificate."
[3] Rule 31(d) states in its second paragraph: "If the appeal from a judgment of conviction entered upon a plea of guilty or nolo contendere [in the superior court] is based solely upon grounds (1) occurring after entry of the plea which do not challenge its validity or (2) involving a search or seizure, the validity of which was contested pursuant to section 1538.5 .... the provisions of section 1237.5 ... requiring a statement by the defendant and a certificate of probable cause by the trial court are inapplicable, but the appeal shall not be operative unless the notice of appeal states that it is based upon such grounds."
[4] Acosta holds that section 1237.1 can apply to a defendant, like Mendez, who filed a notice of appeal prior to its effective date. (People v. Acosta, supra, 48 Cal.App.4th at pp. 415-420, 55 Cal.Rptr.2d 675.) Mendez did not  and does not  argue to the contrary.
[5] See, e.g., People v. Panizzon, supra, 13 Cal.4th at page 89, footnote 15, 51 Cal.Rptr.2d 851, 913 P.2d 1061; People v. Hoffard, supra, 10 Cal.4th at page 1180 and footnote 8, 43 Cal.Rptr.2d 827, 899 P.2d 896 (dictum); People v. Enlow (1998) 64 Cal.App.4th 850, 853-854, 75 Cal.Rptr.2d 402; People v. Stubbs (1998) 61 Cal.App.4th 243, 244-245, 71 Cal.Rptr.2d 423; People v. Jones (1995) 33 Cal.App.4th 1087, 1093-1094, 39 Cal. Rptr.2d 530; People v. Manriquez (1993) 18 Cal. App.4th 1167, 1170-1171, 22 Cal.Rptr.2d 779; People v. Breckenridge (1992) 5 Cal.App.4th 1096, 1098-1101, 8 Cal.Rptr.2d 1; People v. Ballard (1985) 174 Cal.App.3d 982, 984-989, 220 Cal. Rptr. 323; People v. Patterson, supra, 151 Cal. App.3d at pages 255-257, 198 Cal.Rptr. 585; People v. Pinon, supra, 96 Cal.App.3d at pages 908-909, 158 Cal.Rptr. 425.
[6] See, e.g., People v. Panizzon, supra, 13 Cal.4th at page 89, footnote 15, 51 Cal.Rptr.2d 851, 913 P.2d 1061; People v. Hoffard, supra, 10 Cal.4th at page 1180, footnote 8, 43 Cal.Rptr.2d 827, 899 P.2d 896; People v. Jones, supra, 33 Cal.App.4th at page 1094, 39 Cal.Rptr.2d 530; People v. Ballard, supra, 174 Cal.App.3d at pages 987-988, 220 Cal.Rptr. 323; People v. Patterson, supra, 151 Cal.App.3d at page 257, 198 Cal.Rptr. 585; People v. Pinon, supra, 96 Cal.App.3d at page 909, 158 Cal.Rptr. 425.
[7] See, e.g., People v. Holland, supra, 23 Cal.3d at pages 84-85, 151 Cal.Rptr. 625, 588 P.2d 765; In re Brown, supra, 9 Cal.3d at page 683, footnote 6, 108 Cal.Rptr. 801, 511 P.2d 1153 (dictum); People v. Flores (1971) 6 Cal.3d 305, 308 and footnote 2, 98 Cal.Rptr. 822, 491 P.2d 406; People v. Herrera, supra, 66 Cal.2d at page 665, 58 Cal.Rptr. 319, 426 P.2d 887; People v. Cortez (1997) 55 Cal.App.4th 426, 429, 64 Cal.Rptr.2d 71; People v. Clark, supra, 51 Cal.App.4th at pages 579-581, 59 Cal.Rptr.2d 234; People v. Cepeda (1996) 49 Cal.App.4th 1235, 1237, 57 Cal.Rptr.2d 246; People v. Everett (1986) 186 Cal.App.3d 274, 279-280, 230 Cal.Rptr. 604; People v. Tirado (1984) 151 Cal.App.3d 341, 348, 198 Cal.Rptr. 682; People v. Chavez (1981) 124 Cal.App.3d 215, 218-221, 177 Cal.Rptr. 306; People v. Santos (1976) 60 Cal.App.3d 372, 376-379, 131 Cal.Rptr. 426; People v. Coley, supra, 257 Cal.App.2d at page 793, 65 Cal.Rptr. 559.
[8] See, e.g., People v. Everett, supra, 186 Cal. App.3d at page 280 and footnote 2, 230 Cal.Rptr. 604; People v. Tirado, supra, 151 Cal.App.3d at page 348, 198 Cal.Rptr. 682; People v. Chavez, supra, 124 Cal.App.3d at page 221, 177 Cal.Rptr. 306; People v. Santos, supra, 60 Cal.App.3d at pages 376-379, 131 Cal.Rptr. 426.
[9] See People v. Everett, supra, 186 Cal.App.3d at page 280, footnote 2, 230 Cal.Rptr. 604; see also, e.g., People v. Holland, supra, 23 Cal.3d at pages 84-85, 151 Cal.Rptr. 625, 588 P.2d 765; People v. Flores, supra, 6 Cal.3d at page 308 and footnote 2, 98 Cal.Rptr. 822, 491 P.2d 406; People v. Herrera, supra, 66 Cal.2d at page 665, 58 Cal. Rptr. 319, 426 P.2d 887; People v. Cortez, supra, 55 Cal.App.4th at page 429, 64 Cal.Rptr.2d 71; People v. Cepeda, supra, 49 Cal.App.4th at page 1237, 57 Cal.Rptr.2d 246; People v. Young (1991) 228 Cal.App.3d 171, 178-179, 278 Cal.Rptr. 784; People v. Grey (1990) 225 Cal.App.3d 1336, 1338-1340, 275 Cal.Rptr. 572, disapproved on a point not pertinent here, In re Jordan (1992) 4 Cal.4th 116, 130, footnote 8, 13 Cal.Rptr.2d 878, 840 P.2d 983; People v. Forrest (1990) 221 Cal. App.3d 675, 677-678, footnote 2, 270 Cal.Rptr. 573; People v. Vento, supra, 208 Cal.App.3d at page 878, footnote 1, 256 Cal.Rptr. 497; People v. Smith (1985) 171 Cal.App.3d 997, 1000-1001, 217 Cal.Rptr. 634; People v. Arwood (1985) 165 Cal.App.3d 167, 171-173, 211 Cal.Rptr. 307 (per Panelli, P.J.); People v. Jerome (1984) 160 Cal. App.3d 1087, 1094-1095, 207 Cal.Rptr. 199; People v. Tirado, supra, 151 Cal.App.3d at page 348, 198 Cal.Rptr. 682; People v. Chavez, supra, 124 Cal.App.3d at pages 218-221, 177 Cal.Rptr. 306; People v. Santos, supra, 60 Cal.App.3d at pages 376-379, 131 Cal.Rptr. 426; People v. Martinez (1975) 46 Cal.App.3d 736, 743, 120 Cal. Rptr. 362; People v. Dena (1972) 25 Cal.App.3d 1001, 1004-1005, 102 Cal.Rptr. 357; People v. Coley, supra, 257 Cal.App.2d at page 793, 65 Cal.Rptr. 559.
[10] We note in passing that subdivision (b) of section 1240.1 imposes a duty on appointed counsel in the superior court, under certain circumstances, to "file ... a timely notice of appeal" on the defendant's behalf, and to "file" therewith a "brief statement of the points to be raised on appeal," and that subdivision (d) of the same provision states that appointed counsel's failure to do so "shall not foreclose [the] defendant from filing a notice of appeal on his ... own behalf or from raising any point or argument on appeal...." We believe that the foregoing allows the defendant to comply with section 1237.5 and rule 31(d), first paragraph, either by himself or through another, even if his counsel does not do so on his behalf. But we do not believe that it allows him not to comply without suffering the consequences.
[11] Together, rule 31(d), first paragraph, and rule 31(d), second paragraph, provide that a defendant who, desiring to base his appeal on both certificate and noncertificate grounds, has timely filed a notice of appeal stating noncertificate grounds and also a statement of certificate grounds, but has not timely obtained a certificate of probable cause, does indeed have an operative appeal as to noncertificate issues  for which a certificate of probable cause is not necessary under rule 31(d), second paragraph  but does not have an operative appeal as to certificate issues  for which a certificate of probable cause is necessary under rule 31(d), first paragraph. In this area, a preprinted form like that used by the superior court would aid such a defendant and also the superior court clerk. By check mark, he could indicate that his appeal was based on noncertificate grounds. By another check mark, he could indicate that his appeal was based on certificate grounds as well, and then fill out a section in which he could state such grounds with an eye toward obtaining a certificate of probable cause. The superior court would proceed to execute, or refuse to execute, a certificate of probable cause at a place provided on the form, and then file the form itself.

The question suggests itself whether a defendant, who has timely filed a notice of appeal stating noncertificate grounds, may then timely file in addition a statement of certificate grounds, whether as an intended notice of appeal or otherwise, in order to raise certificate issues as well as noncertificate issues. The answer may be left to a case  unlike the present one  whose facts demand it to be given.
[1] Some have questioned the attribution of this statement. (See, e.g., Keyes, "Nice Guys Finish Seventh"  False Phrases, Spurious Sayings, and Familiar Misquotations (1992) p. 152.) "Yogi denies he said it. [Citation.] On the other hand, Yogi did say, `I really didn't say everything I said,' [citation], so go figure." (Araiza et al., The Jurisprudence of Yogi Berra (1997) 46 Emory L.J. 697, 714, fn. 100.)